IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY EDWARDS,

Plaintiff, No. CIV S-05-1353 LKK DAD P

vs.

TOM L. CAREY, et al.,

Defendants.

ORDER AND

FINDINGS AND RECOMMENDATIONS

______________________________/

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On April 2, 2007, a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure was filed on behalf of defendants Blackwell, Carey, Long, and Fry. On April 10, 2007, plaintiff filed a timely opposition. On April 17, 2007, plaintiff filed an amended opposition.[1] Defendants have not filed a reply.

/////

/////

[1] Plaintiff's opposition and amended opposition do not comply with Local Rule 56-260. Plaintiff did not reproduce and admit or deny each fact itemized in defendants' statement of undisputed facts. Nor did plaintiff present his own concise statement of disputed facts, as permitted. Nevertheless, in the interests of justice, the court has considered plaintiff's opposition and amended opposition to defendants' motion for summary judgment.

## PLAINTIFF'S CLAIMS

Plaintiff alleges that on or about June 18, 2003, he discussed with defendant Blackwell the potential for him to receive family visitation. (Compl. at 3.) Plaintiff further alleges that defendant Blackwell told him to have his wife send in a copy of their marriage license. (Id.) Plaintiff alleges that defendant Blackwell also spoke with plaintiff's wife and explained the process for family visitation to her. (Id.)

Plaintiff alleges that his wife forwarded a copy of their marriage license as directed, but defendant Blackwell informed them that it was not acceptable because it did not come directly from a county or city office. (Compl. at 3.) Plaintiff alleges that he told defendant Blackwell he would direct his wife to have Chicago City Hall send a copy of the license. (Id.) Plaintiff alleges that defendant Blackwell informed plaintiff that the name on his marriage license would have to match the name in his central file. (Id. at 3-3b.) Plaintiff alleges, however, that he explained to Blackwell that his name appears differently on his marriage license but that the name on his marriage license and the name he is incarcerated under both belong to him. (Id. at 3b.)

Plaintiff alleges that he submitted a CDC 602 grievance requesting family visitation, but defendants denied his appeal at each level of review. (Compl. at 3b.) Plaintiff then commenced this action, requesting an order from the court allowing him to participate in the family visiting program. (Id. at 4.)

## PROCEDURAL HISTORY

On September 19, 2005, this court determined that plaintiff's complaint appeared to state cognizable claims for relief pursuant to 42 U.S.C. § 1983 against four defendants. In due course, the United States Marshal served plaintiff's complaint on defendants Blackwell, Carey, Long, and Fry. On December 29, 2005, defendants filed an answer. On January 9, 2006, the court issued a discovery order and on July 10, 2006 issued a scheduling order requiring that all pretrial motions be filed on or before January 5, 2007. On April 2, 2007, defendants filed the

instant motion for summary judgment, together with a request for leave to act beyond time in filing the untimely motion. Good cause appearing, the undersigned granted defendants' request and ordered plaintiff to file an opposition or statement of non-opposition to defendants' motion for summary judgment. On April 10, 2007, plaintiff filed a timely opposition. On April 17, 2007, plaintiff filed his amended opposition.

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On October 3, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 28 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory

/////

allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Constitutionality of Prison Regulations

The Supreme Court has declared that a prison regulation that impinges on a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). Four factors are relevant in deciding whether a prison regulation withstands a constitutional challenge. The first factor is whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Id. The second factor is whether prisoners have alternative means of exercising the constitutional right that is allegedly impinged on by the regulation. Id. at 90. The third factor is what impact an accommodation of the asserted constitutional right will have on guards and other prisoners, and on the allocation of prison resources generally. Id. The fourth and final factor is whether there are alternatives to the challenged regulation. Id. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. Id.

III. California Family Visiting Program

Under the California Code of Regulations and the California Department of Corrections and Rehabilitation Operations Manual ("DOM"), certain inmates are allowed to participate in the family visiting program. Family visits are extended overnight visits provided to eligible inmates and their immediate family members. Cal. Code of Regs. tit. 15 §§ 3000 & 3177. "Immediate family members" is defined to include a "legal spouse." Id. § 3000. Family visiting is a "privilege" and is restricted as necessary to maintain order, the safety of persons, the security of the facility, and required prison activities and operations. Id. § 3177(b).

At the time plaintiff applied for family visits, inmates were assigned a correctional counselor who was responsible for determining the inmate's eligibility to participate in the family visiting program. (Compl. Ex. C (DOM § 54020.33.2).) However, it was an inmate's

/////

responsibility to ensure that his correctional counselor received a certified copy of his marriage certificate which the counselor would validate.[2] (Id.)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by a declaration by plaintiff's former correctional counselor, defendant R. Blackwell; a declaration by D. Blackwell, a visiting Lieutenant overseeing the visiting program for inmates; and copies of records from plaintiff's central file.

The undersigned finds that defendants' evidence establishes the following facts: Plaintiff is a California prisoner who was sentenced in 1998 to a term of imprisonment of 17 years to life for burglary in the first degree, burglary in the second degree and attempted burglary in the second degree with enhancements. Plaintiff was arrested and booked under the name Jerry Williams, aka Tyrone Davis, true name Larry Edwards. The probation report in plaintiff's case did not state his marital status, but the report does reflect that he had a sixteen-year-long relationship with a Christine Shelton. The couple had two children at the time plaintiff was imprisoned. Plaintiff transferred to CSP-Solano on June 13, 2003. His earliest possible release date is April 21, 2011.

There are eight family visiting units at CSP-Solano. Four are on side A and four are on side B of the institution. Approximately 140 to 150 inmates at CSP-Solano have requested and been found eligible for family visits. Family visits at CSP-Solano take place six days a week and the units are generally full. Each of the eligible inmates receives a family visit approximately once every three months. Allowing prisoners who are not eligible to participate in

/////

[2] The current DOM similarly states that "[a] certified copy of the marriage certificate shall be presented to the coordinator prior to each visit by the inmate's spouse." DOM § 54020.33.10.

family visiting would necessarily reduce the family visiting time available to those eligible inmates.

In July 2003, correctional counselor Blackwell received a telephone call from a woman who identifying herself as Mrs. Sharpe, plaintiff's wife. The woman indicated that she lived in Milwaukee, Wisconsin and wanted to come to California for a "family visit" with her husband. Counselor Blackwell informed the woman that she was required to send in an authenticated copy of their marriage certificate and to obtain approval for a family visit. Counselor Blackwell also informed her that, effective May 1, 2003, CDCR policy had changed and there were several other factors that might effect approval of family visits.

A week later, Counselor Blackwell received in the mail a photocopy of a marriage license and a birth certificate. Blackwell noticed that the documents came directly from Mrs. Sharpe, not the County Clerk's Office. As a result, the documents were unacceptable because they were not authenticated and could have been altered. In addition, the information reflected in the documents did not match the information contained in plaintiff's central file. Specifically, plaintiff's name and date of birth did not match those appearing in his central file. Based on these factors, Blackwell returned the documents to plaintiff with instructions regarding the documentation required, where the documents had to come from, and in what condition they had to appear in order to start the approval process for family visits.

Approximately three weeks later, Blackwell received an envelope from the Cook County Clerk's Office. Blackwell noticed that the envelope had been folded in three places and that the postmark on the envelope was from Milwaukee, Wisconsin. Suspicious, Blackwell contacted the Cook County Clerk's Office and was told that if the envelope had come from that office, it would bear a postmark from Chicago, Illinois. Blackwell believed that the documents may have been altered and denied plaintiff's request for family visits on that basis.

On August 11, 2003, plaintiff filed an administrative grievance, alleging that he had discussed family visits with Blackwell, who nonetheless rejected the documents his wife

sent. Plaintiff attached copies of the documents to the grievance, including a birth certificate bearing the name "Larry Donramon Sharpe" and a marriage certificate bearing the name "Lorenzo L. Sharpe." Both of the documents bear the phrase "VOID WITHOUT WATERMARK OR IF ALTERED OR ERASED." Based on these documents, plaintiff requested that he be found eligible to receive family visits.

Counselor Blackwell denied plaintiff's grievance at the informal level of review, explaining that the documents had to come directly from the County Clerk's Office. Dissatisfied, plaintiff appealed to the next level of review. Plaintiff claimed that the documents were not copies but originals. On September 8, 2003, Acting Associate Warden Fry denied plaintiff's grievance. Fry reiterated the process for submitting legal documents and told plaintiff that the name and birth date on the documents submitted had to match the name and birth date on documents in his central file. Still dissatisfied, plaintiff appealed to the second level of review and subsequently the director's level of review. At both levels, prison officials denied his grievance.

II. Defendants' Arguments

Based on this evidence, the defendants argue that plaintiff is not entitled to injunctive relief in the form of a court order requiring that he be found eligible for family visitation because he has no liberty interest under the Fourteenth Amendment in conjugal visits with a spouse while incarcerated. (Defs.' Mot. for Summ. J. at 5.) Defendants contend that in order to prevail on his request for injunctive relief, plaintiff must show either a likelihood of success on the merits and the possibility of irreparable injury, or that some serious question is raised and the balance of hardships tips sharply in plaintiff's favor. (Id.) According to defendants, in the absence of a showing of non-speculative irreparable harm, the court need not reach the issue of likelihood of success on the merits.

Defendants note that incarceration places substantial restrictions on plaintiff's First Amendment rights of association, even with his family. (Id.) In addition, defendants

contend that a court must "accord deference to the professional judgment of prison administrators" in this area (Id. at 5-6.) They argue that when deciding whether a prison regulation imposes undue restrictions on a prisoner's rights, in this case the First Amendment right of association, the burden is on the inmate to disprove the validity of the challenged regulation. (Defs.' Mot. for Summ. J. at 6.)

Defendants contend that plaintiff's claim is based on his mistaken belief that he has a liberty interest in conjugal visits. (Id.) Defendants argue that prison officials are not obligated to provide inmates the privilege of receiving overnight family visitation. (Id.) They contend that the restrictions they have elected to impose on such visits do not impose an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. (Id.) Defendants argue that, while the U.S. Supreme Court has recognized that "the Constitution protects certain kinds of highly personal relationships," the Court has also emphasized that "the very object of imprisonment is confinement." (Id.) Defendants assert that the Due Process Clause does not guarantee any interest in prison visitation, let alone a particular form of visitation. (Id. at 7.) Rather, they contend, courts have routinely found that contact visiting in general, and overnight visiting in particular, are not constitutionally required. (Id.)

Defendants argue that the Supreme Court has found that prison regulations limiting inmates' right to intimate association are valid if they bear a rational relationship to legitimate penological interests. (Defs.' Mot. for Summ. J. at 7.) Defendants reiterate that the courts must accord substantial deference to the judgment of prison officials in defining the legitimate goals of the corrections system and determining the most appropriate means to accomplish them. (Id.) Thus, defendants contend that restrictions on visiting must be upheld if the regulation meets the four-part test set forth in Turner v. Safley, 482 U.S. at 89 (1987). (Id.) Defendants contend that the regulation at issue here meets that test and should be upheld. (Id.)

Defendants note that, although not required to do so, California has elected to provide overnight family visits to eligible inmates. (Id.) However, the CDCR restricts eligibility

for such visits to inmates who can obtain the most rapid and tangible benefits from them, i.e., those inmates who: (1) will be returning to their families within a known period of time; (2) have not violated their family's trust by committing violent acts against them; (3) have not demonstrated a threat to society by acts of sexual predation; and (4) have not engaged in serious in-prison misconduct. (Id. at 7-8.)

Defendants note that while plaintiff has failed to satisfy one or more of the eligibility requirements, the focus of this action is his exclusion based on his failure to establish that he is legally married. (Defs.' Mot. for Summ. J. at 8.) Defendants argue that prison officials have a legitimate interest in using their limited resources to afford the privilege of family visits to inmates who are married. In addition, defendants argue that prison officials have a legitimate interest in granting family visits to inmates who are expected to be released to the community and their families within a known period of time. (Id.) In this case, according to defendants, plaintiff's earliest possible parole date is not until April 21, 2011, and there is no evidence indicating that he will return to his wife and children when released. (Id.)

Second, defendants note that there are alternative means for plaintiff to enjoy familial association. (Id.) In this regard, defendants take the position that, although plaintiff has not been allowed overnight conjugal visits, he is not prohibited from all familial contact. (Id. at 9.) For example, he may visit with his family members in the prison's visiting room or may communicate with them by letter or telephone. (Id.) Plaintiff does not contend that he is unable to maintain his family relationships in these ways. (Id.)

Third, defendants note that allowing ineligible inmates to have family visits would impact staff, other inmates, and the allocation of prison resources by placing additional demands on use of the limited housing units available for the family visiting program. (Id. at 9.) As it is, eligible inmates receive family visits only once every three months. (Id.) Defendants argue that allowing ineligible inmates such as plaintiff to participate in the program would necessarily require additional funds for a program that is not constitutionally required in the first place. (Id.)

Finally, defendants argue that plaintiff has failed to offer alternatives that would not impose more than a de minimis cost to serve CSP-Solano's valid penological interests. (Defs.' Mot. for Summ. J. at 9.) Defendants contend that there are no such readily available alternatives because of the impact on prison resources and on other inmates. (Id.)

Defendants conclude that plaintiff is unlikely to succeed in this action because he has no liberty interest in family visits. (Id.) Moreover, defendants contend that plaintiff has not established that he is married and eligible for family visits. (Id.) Based on the undisputed evidence, defendants request that the court grant their motion for summary judgment, deny plaintiff's request for injunctive relief, and dismiss this case.

III. Plaintiff's Opposition

In opposition, plaintiff argues that Section 3177 of the California Rules and Regulations permits a prisoner to receive a family visit. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 1.) Plaintiff notes that, although a family visit is a privilege, it stems from the rules and regulations that the California Department of Corrections has implemented. (Id.) Plaintiff argues that unless a prisoner violates the relevant rule or regulation, he has acquired the privilege. (Id.) He contends that he has not violated any rule or regulation that would make him ineligible for the family visiting program. (Pl.'s Am. Opp'n to Defs.' Mot. for Summ. J. at 2.)

Plaintiff also contends that his new correctional counselor has received a copy of his marriage license from the Office of the Cook County Vital Statistics. (Pl.'s Am. Opp'n to Defs.' Mot. for Summ. J. at 2.) Plaintiff argues that there has never been any reason to deny him and his family their family visit. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 3.) He asserts that defendants' continued denial of his eligibility for the family visiting violates the First and Fourteenth Amendments. (Pl.'s Am. Opp'n to Defs.' Mot. for Summ. J. at 2.) Plaintiff concludes that the court should grant his request for injunctive relief and deny defendants' motion for summary judgment.

/////

**ANALYSIS**

There are no disputed issues of material fact in connection with the pending motion for summary judgment. Although the parties dispute whether plaintiff is legally married, there is no legitimate dispute as to the fact that plaintiff has failed to provide prison officials with a certified copy of his marriage certificate.[3] Thus, plaintiff has not demonstrated that he has a "legal spouse" and meets the eligibility criteria to participate in the family visiting program.[4] See Cal. Code of Regs. tit. 15, §§ 3000, 3177; DOM §§ 54020.33.2, 54020.33.10. Below, the court will address defendants' motion with respect to each of the constitutional basis for plaintiff's claim.

I. First Amendment Freedom of Association

"[F]reedom of association is among the rights least compatible with incarceration." Overton v. Bazzetta, 539 U.S. 126, 131 (2003). In the prison context, some curtailment of that freedom must be expected. Id.; Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) ("The loss of the right to intimate association is simply part and parcel of being

---

[3] Plaintiff argues in his opposition that his new correctional counselor has now received a copy of plaintiff's marriage license. However, plaintiff has not provided the court with any evidence in support of this assertion. Plaintiff has attached to his opposition an affidavit from "Mrs. Christine Shelton Sharpe-Edwards" in which she states that she has been married to plaintiff for thirty-five years. (Pl.'s Opp'n to Defs.' Mot. for Summ., Ex. B.) However, the affidavit does not speak to whether the properly-certified documents have been submitted to prison officials. In fact, the affiant mentions only the occasion when she, as opposed to the Cook County Clerk's Office, sent prison officials a copy of their marriage license. As noted above, an opposing party to a motion for summary judgment may not rely upon the allegations or denials of the pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of the contention that a dispute as to a material fact exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

[4] As defendants note in their motion, even if plaintiff properly establishes that he is legally married, it appears that he may not be eligible to participate in the family visiting program. CDCR restricts eligibility to prisoners who "(1) will be returning to their families within a known period of time; (2) have not violated their family's trust by [committing] violent acts against them; (3) have not demonstrated a threat to society by acts of predation acts; and (4) have not engaged in serious in-prison misconduct." (Defs.' Mot. to Dismiss, Ex. B.) Plaintiff's earliest possible release date is not until April 21, 2011 and he has not presented evidence indicating that he will return to Ms. Shelton Sharpe-Edwards and their children upon his release.

imprisoned for conviction of a crime."). This court need not attempt to determine the extent to which freedom of association survives incarceration because the family visiting regulation at issue here bears a rational relationship to legitimate penological interests. See Overton, 539 U.S. at 132 ("We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests. This suffices to sustain the regulation in question.").

Prison officials have a legitimate interest in using their limited resources to restrict family visits to prisoners who are married and expected to be released to the community and their families within a determinate period of time. In this regard, the family visiting regulation serves to maintain family and community connections and prepare inmates for successful release and rehabilitation. Cal. Code of Regs. tit. 15, § 3170(a). Given the limited facilities available for family visiting, prison officials have reasonably determined that the eligibility criteria must be met before prisoners can participate.

In addition, the rational relationship between this legitimate penological interest and the regulation in question is demonstrated by the evidence before the court. In this regard, Lt. Blackwell declares that: "[a]llowing prisoners who are not legally married, and who have not been approved for family visits, to participate in family visiting would necessarily reduce the amount of family visiting time available to those inmates who are currently eligible to receive such visits." (D. Blackwell Decl. at 2, ¶ 4.) This court cannot say that requiring prisoners to meet certain eligibility criteria to participate in the family visiting program is unreasonable.

The second Turner factor requires the court to consider whether other avenues remain available for exercising the asserted right. In this case, plaintiff has alternative means of exercising the First Amendment right to association. Even if he cannot participate in the family visiting program, he can still visit with Ms. Shelton Sharpe-Edwards in the prison visiting room and by letter and telephone. See Overton, 539 U.S. at 135 (finding such alternatives to be of

sufficient utility to support a prison regulation limiting visitations). He can also send messages to his Ms. Shelton Sharpe-Edwards through his other visitors. Id. As the Supreme Court has held maintained, "[a]lternatives to visitation need not be ideal; however, they need only be available." Id. See also Gerber, 291 F.3d at 621-22 ("The fact that California prison officials may choose to permit some inmates the privilege of conjugal visits is simply irrelevant to whether there is a constitutional right to conjugal visits . . . .")

The third Turner factor concerns the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. As noted above, there are limited family visiting facilities. Even prisoners who are eligible to participate in family visiting are only able to do so once every three months. If plaintiff and all other prisoners who are ineligible to participate in the program were accommodated, the family visiting program would likely be overwhelmed.

Finally, the fourth Turner factor assesses whether there is a lack of ready alternatives. "Turner does not require a least-restrictive alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton, 539 U.S. 136. Plaintiff has not suggested any alternative that would meet this standard.

Accordingly, this court concludes that the family visiting regulation in question is reasonably related to legitimate penological interests both on its face and as applied in plaintiff's case. Defendants' motion for summary judgment should therefore be granted with respect to plaintiff's First Amendment claim.

II. Eighth Amendment Freedom from Cruel and Unusual Punishment

Plaintiff has suggested that denying him family visits under these circumstances constitutes cruel and unusual punishment. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment in violation of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v.

Gamble, 429 U.S. 97, 105-06 (1976). However, neither accident nor negligence constitutes cruel and unusual punishment, for "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319. To prevail on any claim of cruel and unusual punishment, a prisoner must satisfy a two-part test. First, the prisoner must prove that objectively he suffered a sufficiently serious deprivation. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the prisoner must prove that subjectively each defendant had a culpable state of mind in allowing or causing the deprivation to occur. Id. at 298-99.

Plaintiff has failed to present any evidence satisfying the first part of the applicable test. A rule or regulation imposing restrictions or eligibility criteria regarding who may participate in the family visiting program does not create inhumane prison conditions, deprive plaintiff of basic necessities, or fail to protect plaintiff's health or safety. Nor does the regulation involve infliction of pain or injury or reflect deliberate indifference to the risk that it might occur. Overton, 539 U.S. at 136 (concluding that restriction on visitation for certain inmates made the prisoners' confinement more difficult to bear but did not fall below the standards mandated by the Eighth Amendment). Accordingly, application of the family visiting regulation in plaintiff's case does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

III. Fourteenth Amendment Due Process and Equal Protection

A. Due Process

Although prisoners retain those constitutional rights that are not inconsistent with their status or with the legitimate penological objectives of the correctional system, they do not have a right to contact or family visits under the Due Process Clause of the Fourteenth Amendment. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460-61 (1989) (holding that the denial of prison access to certain visitors "'is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently

protected by the Due Process Clause'"); Gerber, 291 F.3d at 621 (holding that the right of intimate association, which includes cohabitation with one's spouse, is necessarily abridged during incarceration and that such loss "is simply part and parcel of being imprisoned for conviction of a crime"); see also Turner, 482 U.S. at 95-96. Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," those circumstances are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

In this case, the CDCR's family visiting regulation does not impose an atypical and significant hardship on plaintiff. Plaintiff's inability to visit his family is an ordinary incident of prison life. Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir. 1986) (observing that denial of contact visits "is part of the penalty that criminals pay for their offenses against society"); see also Sandin, 515 U.S. at 485-86; Kentucky Dep't of Corrections, 490 U.S. at 461. Accordingly, application of the family visiting regulation to plaintiff does not implicate his due process rights.

B. Equal Protection

Equal protection is relevant with respect to classifications that impermissibly operate to disadvantage a suspect class or improperly interfere with an individual's exercise of a fundamental right. "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319 (1993). Here, the CDCR's family visiting regulation implicate neither a suspect class or a fundamental right. Accordingly, the highly deferential rational basis standard applies to any equal protection challenge to the regulation.

Plaintiff has not presented any evidence suggesting that he was treated differently from similarly situated inmates in connection with family visitation. See Fraley v. United States Bureau of Prisons, 1 F.3d 924, 926 (9th Cir. 1993); see also City of Cleburne, Tex. v. Cleburne

Living Center, 473 U.S. 432, 439 (1985) (holding that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"). Moreover, as determined above, the family visiting regulation at issue is rationally related to legitimate governmental interests. See, e.g., Block v. Rutherford, 468 U.S. 576, 586 (1984) ("That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion."). Accordingly, application of the family visiting regulation in plaintiff's case does not violate equal protection principles.

**OTHER MATTERS**

Both parties have filed requests for judicial notice. Defendants have requested that the court take judicial notice of copies of the California regulations related to prisoner visitation attached as Exhibit A to their motion. Plaintiff has requested that the court take judicial notice of various factual allegations and legal arguments in his opposition to defendants' motion for summary judgment. Judicial notice of adjudicative facts is appropriate with respect to matters that are beyond reasonable dispute in that they are either generally known or capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201 and advisory committee notes. Defendants' request for judicial notice will be denied as unnecessary. Plaintiff's request for judicial notice will be denied because he seeks that judicial notice be taken of matters failing to meet the requirements of the applicable rule. See Fed. R. Evid. 201(b).

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' April 2, 2007 request for judicial notice is denied as unnecessary; and

2. Plaintiff's April 13, 2007, April 24, 2007, and May 3, 2007 requests for judicial notice are denied.

/////

IT IS HEREBY RECOMMENDED that defendants' April 2, 2007 motion for summary judgment be granted and that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 3, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
edwa1353.57